**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| GRACIOUS LIVING CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:16-cv-02364-DCN |
| | ) | |
| vs. | ) | |
| | ) | |
| COLUCCI & GALLAHER, PC AND JOHN KEENAN, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on defendant Colucci & Gallaher, PC's ("Colucci") motion to dismiss and plaintiff Gracious Living Corporation's ("Gracious Living") motion to remand. For the reasons set forth below, the court denies Colucci's motion to dismiss for lack of personal jurisdiction and denies Gracious Living's motion to remand.[1]

## I. BACKGROUND

In this legal malpractice action Gracious Living, a Canadian company, seeks to recover against Colucci, a New York law firm and professional corporation. The complaint alleges that Colucci appeared through its then-employee John Keenan ("Keenan") in South Carolina courts on behalf of the plaintiff, even though no lawyers at Colucci were licensed in South Carolina. ECF No. 1, Ex. 1 ¶ 4.

---

[1] On September 14, 2016 the clerk entered an order of default against Keenan, the second defendant in this action. ECF No. 19. The court has not yet entered a default judgment against Keenan, so as of yet there are no facts "deemed admitted" that could prejudice Colucci as the non-defaulting defendant. Since Colucci has appeared in the action, the order of default against Keenan does not preclude Colucci from presenting a defense. This order assumes that the case will proceed as planned with Colucci as the remaining defendant.

1

Gracious Living initially retained Colucci in 2012 to represent it in a claim against Joseph Juscik ("Juscik") related to a commercial dispute. ECF No. 1, Ex. 1 ¶ 6. This 2012 action was filed in the U.S. District Court for the Western District of Michigan, Southern Division, and was eventually resolved pursuant to a settlement agreement between the parties. ECF No. 4-2. Juscik, who retained a residence in Mt. Pleasant, South Carolina, defaulted on the payment of the settlement agreement for the Michigan case in September 2013. Id. Keenan left Colucci in January 2014.[2] ECF No. 1, Ex. 1 ¶ 14. Without seeking Gracious Living's consent, Colluci transferred the Gracious Living file to Keenan. Id. ¶ 16.

In March 2014, South Carolina Federal Credit Union ("SCFCU") filed a foreclosure lawsuit against Juscik on the mortgage that it held on his home in Charleston County. Id. ¶ 17. Colucci was the statutory agent of service for this action, id. ¶ 12, and an Affidavit of Service as to Gracious Living Corporation was filed with the Clerk of Court for Charleston County. Gracious Living was entitled to the payment of the surplus from the foreclosure auction to satisfy its Confession of Judgment.

Beginning in November 2014, employees at Gracious Living began to correspond with Keenan about SCFCU's foreclose action against Juscik. ECF No. 1, Ex. 1 at 32-40. Numerous emails from Gracious Living to Keenan asked about submitting documents to the Clerk of Court to ensure that Gracious Living would be able to collect on the $65,391.63 in surplus funds from the Juscik foreclosure. Neither Keenan, who by this time was no longer employed at Colucci, nor any other lawyer at Colucci, responded in a

---

[2] It is unclear when Keenan left Colucci; the complaint says January 2014, but the Defendant's Motion to Dismiss says Keenan left in December 2013. ECF No. 4-2.

timely fashion and, as a result, Juscik was able to claim Gracious Living's share of the surplus funds. ECF No. 1, Ex. 1 ¶ 31-34.

Gracious Living alleges that Colucci committed legal malpractice because the law firm knew that none of the lawyers it employed were licensed to practice law in South Carolina, yet failed to advise Gracious Living to hire counsel in South Carolina, that (1) Colucci engaged in the unauthorized practice of law when Keenan prepared and filed the judgment for the settlement of the 2012 Michigan lawsuit under the supervision of senior Colucci attorneys, (2) Colucci failed to seek Gracious Living's consent to transfer its file to Keenan and failed to take steps to withdraw as counsel of record, (3) Colucci failed to properly supervise Keenan, and (4) neither Keenan nor Colucci took adequate steps to protect the interests of Gracious Living in the divvying up of surplus funds in the Juscik foreclosure matter. ECF No. 1, Ex. 1 ¶ 42.

The instant suit was initially filed in the Court of Common Pleas for Charleston County, South Carolina on May 25, 2016. ECF No.1-1. Colucci removed the case to federal court on June 30, 2016. Id. On July 7, 2016, Colucci moved to dismiss on the grounds that this court lacks personal jurisdiction over it. ECF No. 4-1. On July 24, 2016, Gracious Living filed a motion to remand to state court. ECF No. 10-1. The motions have been fully briefed and are ripe for this court's review.

## II.  STANDARD

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

When the defendant challenges personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists. See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). When the court decides a personal jurisdiction challenge without an evidentiary

hearing, the plaintiff must prove a prima facie case of personal jurisdiction. See Mylan Labs, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). "In considering the challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." In re Celotex Corp., 234 F.3d at 628 (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, the court need not "credit conclusory allegations or draw farfetched inferences." Masselli & Lane, PC v. Miller & Schuh, PA, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (quoting Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir.1994)).

### B. Motion to Remand

If federal jurisdiction is doubtful, remand is necessary. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); Pohto v. Allstate Ins. Co., No. 10-2654, 2011 WL 2670000, at *1 (D.S.C. July 7, 2011) ("Because federal courts are forums of limited jurisdiction, any doubt as to whether a case belongs in federal or state court should be resolved in favor of state court.").

### III. DISCUSSION

Colluci brings a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that the court cannot exercise personal jurisdiction over it as an out-of-state resident because exercising personal jurisdiction in South Carolina would offend due process. ECF No. 4-1. Gracious Living brings a motion to remand to state court, arguing that this court should abstain from hearing this case under the Burford v. Sun Oil Co., 319 U.S. 315 (1943) abstention doctrine. ECF No. 10-1.

### A. Motion to Dismiss for Lack of Personal Jurisdiction

In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis. First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented. Second, if the statute authorizes jurisdiction then the court must determine if the statutory assertion of personal jurisdiction is consistent with due process. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). South Carolina's long-arm statute extends to the outer limits allowed by the Due Process Clause, Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002), so the only question before the court is whether the exercise of personal jurisdiction would violate due process. ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999).

The due process test for personal jurisdiction involves two components: minimum contacts and fairness. International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). Under the minimum contacts test, a nonresident defendant must have certain minimum contacts such that the suit does not offend "traditional notions of fair play and substantial justice." Id. More broadly, due process is satisfied if the courts asserts personal jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state," Hanson v. Denckla, 357 U.S. 235, 253 (1958), such that it "should reasonably anticipate being haled into court there." World–Wide Volkswagen, 444 U.S. at 297. After a showing of the defendant's purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. See id. at 292.

Personal jurisdiction over a nonresident defendant can be either specific or general. See ESAB Group, Inc., 126 F.3d at 623–24. Specific jurisdiction is when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36–2–803; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). General jurisdiction is when a suit is unrelated to the defendant's contacts with the forum state, and can be exercised upon a showing that the defendant's contacts are of a "continuous and systematic nature." See S.C. Code Ann. § 36–2–802; Helicopteros Nacionales, 466 U.S. at 416. Since defendants allege that the court has neither general nor specific personal jurisdiction over defendants, ECF No. 4 at 6–10, the court addresses each in turn.

1.     **General Jurisdiction**

The threshold level of minimum contacts required for general jurisdiction calls for a defendant to be engaged in longstanding business in the forum state such as maintaining an office or marketing products. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707 (4th Cir. 2002). A corporation may be subject to general jurisdiction in the forum where it "is fairly regarded as at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). A defendant's mere knowledge that a plaintiff will suffer negative effects in a given forum is insufficient to support jurisdiction; the defendant's intentional contacts must connect it with the forum state. Walden v. Fiore, 134 S. Ct. 1115, 1126 (2014) ("[T]he mere fact that his conduct affected plaintiffs with connection to the forum State does not suffice to authorize jurisdiction."). Following the Supreme Court's decision in Walden, a law firm must meet the "at-home" test for client representation for a court to exercise general jurisdiction. In Daimler AG v. Bauman,

6

134 S. Ct. 746, 752 (2014), the Supreme Court took the at-home standard to mean that a corporate defendant's home forum is only the state of incorporation or principal place of business.

Courts are reluctant to subject law firms that only occasionally represent in-state clients to general jurisdiction for such sporadic representation. See, e.g., Cerberus Partners, LP v. Gadsby & Hannah, LLP, 836 A.2d 1113 (R.I. 2003) (In a case here ten attorneys had been admitted to Rhode Island pro hac vice in six different cases between 1994 and 2003, the law firm's contacts with Rhode Island were not significant enough to give rise to general jurisdiction). In Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law, 787 F.2d 7 (1st Cir. 1986), the First Circuit held that there was no personal jurisdiction in New Hampshire over a Massachusetts law firm that was retained to represent client in suit in Massachusetts, even though the law firm knew that the effects of the corporation's negligence were felt in New Hampshire. New Hampshire's long arm statute, like South Carolina's, is coextensive with the federal Due Process limitations. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984).

Following the reasoning in these cases, there is no general jurisdiction over Colucci here. Colucci never advertised or solicited business in South Carolina and no lawyer employed or associated with Colucci is licensed in South Carolina. ECF No.1, Ex. 1 ¶ 4; ECF No. 11-1. The only activity within South Carolina that Gracious Living alleges Colucci engaged in is that Keenan prepared the confession of judgment for Juscik's signature and directed it to be filed with the Clerk of Court for Charleston County under the supervision of senior lawyers at Colucci. ECF No.1, Ex. 1 ¶11. While this was perhaps the unauthorized practice of law, as Keenan was not licensed in South

Carolina at the time, no lawyer from Colucci ever made any appearance of record in the South Carolina case. ECF No. 4-6. Gracious Living also contends that there is personal jurisdiction here because Colucci was the statutory agent of service and was served process for Gracious Living as a necessary party to the foreclosure for Juscik's Mt. Pleasant home. ECF No. 11-2. However, this is insufficient for Colucci to meet the "at home" standard for the purposes of general jurisdiction in South Carolina.

### 2. Specific Jurisdiction

The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction, asking: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is "constitutionally reasonable." Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 216 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King, 471 U.S. at 472, 476–77).

The first inquiry in the three-part Nolan test concerns whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011) (quoting Hanson, 357 U.S. at 253). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the unilateral activity of another person or third party. Burger King, 471 U.S. at 475. Even a single contact with the forum state can create purposeful availment sufficient to satisfy

8

due process requirements.  Id. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.").

Colucci argues that its alleged failure to file a responsive pleading in the Jusick foreclosure matter demonstrates that it "purposefully *disavailed* itself from conducting activities in or towards South Carolina."  ECF No. 4-10 (emphasis in original).  The court is unconvinced.  While Colluci may not have engaged in in-court representation of Gracious Living in South Carolina, Keenan prepared and filed the confession of judgment with the Clerk of Court for Charleston County under the supervision of senior lawyers at Colucci.  ECF No. 1, Ex. 1 at ¶ 11.  Because Keenan was not licensed in South Carolina at the time that he filed the confession of judgment, this constituted the unauthorized practice of law, and it is this unauthorized practice of law that is an important part of the alleged legal malpractice asserted in this suit.  ECF No. 4-6.  In Hardy v. Pioneer Parachute Co., 531 F.2d 193, 195 (4th Cir. 1976), the Fourth Circuit held that a "single transaction is a sufficient contact to satisfy [due process] if it gives rise to the liability asserted in the suit."  Applying Hardy, Keenan's unauthorized practice of law in filing the confession of judgment is sufficient to confer specific personal jurisdiction in South Carolina courts.

Additionally, courts have found personal jurisdiction exists in legal malpractice claims against nonresident law firms if the legal malpractice claim is filed in the same forum as the underlying action that serves as the factual basis for the legal malpractice claim.  In Allen v. James, 381 F. Supp. 2d 495 (E.D. Va. 2005), a plaintiff brought a malpractice action against attorneys who represented her in connection with an automobile accident that took place in Virginia for their alleged failure to file a lawsuit

within the applicable statute of limitations period.  The Allen court held that the attorneys had purposefully availed themselves of the privilege of conducting business in Virginia, even though they had never advertised or solicited business in Virginia and no member of their firm was an active member of the Virginia bar, because the lawsuit arose out of an accident that took place in Virginia.  Id. at 497.

Colucci argues that the instant action arises from the case that Keenan prosecuted while working for Colucci against Juscik, a 2012 case that was litigated in federal court in Michigan.  ECF No. 4-10.  If the underlying case of the instant suit were the 2012 Michigan case against Juscik, then this court could follow the Allen  court's lead and find that there is no personal jurisdiction in South Carolina.  However, a survey of the emails between Gracious Living and Keenan indicates that the alleged legal malpractice actually arose out of the 2014 foreclosure of Juscik's Mt. Pleasant, South Carolina home and Keenan's filing of the Confession of Judgment in the Court of Common Pleas in Charleston County.  The emails between Gracious Living and John Keenan began on November 2014, when employees at Gracious Living began to correspond with Keenan about collecting surplus funds from SCFCU's foreclose action against Juscik.  ECF No. 1, Ex. 1 at 32.  By June 2015, the tone of emails between Gracious Living and Keenan was growing impatient.  For example, a June 8, 2015 email to Keenan stated "John can I get an update as to what is going on with the [$60,000] ow[ed] to [Gracious Living].  Enzo[3] has not received any documents for signature."  On June 17, 2015, after numerous unanswered emails from Gracious Living to Keenan, Keenan responded with "Lou, I am working on it today.  I have to review all the documents to get the amounts right as to the

---

[3] "Enzo" refers to Enzo Macri, the President of Gracious Living.

judgment etc. I can't send it to Enzo until I have it done correctly. If I don't get it right it will simply be denied by the court." ECF No. 1, Ex. 1 at 40. These emails between Gracious Living and Keenan indicate that Gracious Living's legal malpractice claims center on Keenan's conduct in the collection of the confession of judgment from Jusick's Mt. Pleasant home, not the 2012 Michigan case. Accordingly, under <u>Allen</u> this court has specific jurisdiction over Colucci.

Colucci argues that the exercise of jurisdiction violates due process, but the remaining prongs of the <u>Nolan</u> test are satisfied here and the facts are not egregious enough to suggest that the court's exercise of jurisdiction would be constitutionally unreasonable. Assuming that Colucci charged Gracious Living a fee for filing the Confession of Judgment, Gracious Living's legal malpractice claims against Colucci arise at least in part out of the Juscik foreclosure matter in South Carolina. ECF No. 1, Ex. 1 ¶ 42. Colucci was the statutory agent of service in South Carolina, and was served process for Gracious Living as a necessary party to the foreclosure because of its judgment. ECF No. 11-2. Furthermore, a corporation must be represented by a licensed attorney in South Carolina. <u>See e.g.</u> <u>State ex rel. Daniel v. Wells</u>, 5 S.E.2d 181, 186 (S.C. 1939) holding modified by <u>In re Unauthorized Practice of Law Rules Proposed by S. Carolina Bar</u>, 422 S.E.2d 123 (S.C. 1992) ("[A corporation] must act in all its affairs through agents or representatives. In legal matters, it must act, if at all, through licensed attorneys"); <u>Renaissance Enterprises, Inc. v. Summit Teleservices, Inc.</u>, 515 S.E.2d 257 (1999) (Holding that a corporation may not appear pro se in circuit or appellate courts). Therefore, this court has specific jurisdiction over Colucci.

11

### B. Motion to Remand

Gracious Living argues in its motion to remand that the present action must be remanded to state court under the Burford abstention doctrine because the state law claims in this case arise solely from conduct which occurred in South Carolina state courts. ECF No. 10-1. In response, Colluci argues that Burford is applicable when a federal court sitting in diversity jurisdiction is hearing a challenge to a state administrative proceeding, but is inapplicable here because Gracious Living is not challenging a state administrative proceeding. ECF No. 13-5.

In Burford, the Supreme Court held that a federal court sitting in diversity jurisdiction may abstain from hearing a case where (1) the state courts likely have greater expertise in a particularly complex and unclear area of state law which is of special significance to the state, (2) there is a comprehensive state administrative or regulatory procedure, and (3) the federal issues cannot be decided without delving into state law. Burford, 319 U.S. at 315. Burford abstention is permissible when federal adjudication would "unduly intrude" upon "complex state administrative processes" because either: (1) "there are difficult questions of state law whose importance transcends the result in the case then at bar"; or (2) federal review would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." New Orleans Pub. Serv. Inc. v. Council of New Orleans, 491 U.S. 350, 361–63 (1989). Federal courts usually utilize Burford when they sit in diversity jurisdiction to hear challenges to state agency proceedings. See, e.g., Browning-Ferris, Inc. v. Baltimore Cty., Md., 774 F.2d 77 (4th Cir. 1985) (finding that Burford abstention appropriate in challenge to denial by state and county of permits necessary to operate sanitary landfill).

To support its argument that traditional notions of comity apply here, Gracious Living points to the traditional deference to the South Carolina Supreme Court in claims about the practice of law, especially regarding the unauthorized practice of law. See e.g. In re Unauthorized Practice of Law Rules Proposed by S. Carolina Bar, 422 S.E.2d 123, 125 (1992) ("[W]e recognize that other situations will arise which will require this Court to determine whether the conduct at issue involves the unauthorized practice of law. We urge any interested individual who becomes aware of such conduct to bring a declaratory judgment action in this Court's original jurisdiction to determine the validity of the conduct."); S.C. Code Ann. § 40-5-10 ("The inherent power of the Supreme Court with respect to regulating the practice of law, determining the qualifications for admission to the bar and disciplining, suspending, and disbarring attorneys at law is hereby recognized and declared."). However, just because South Carolina state courts have a role in policing the practice of law within the state does not mean that Burford abstention is appropriate here. There is no state administrative proceeding that is being challenged here. The very fact that the South Carolina Supreme Court, and not a state administrative agency, has so much control over the practice of law within South Carolina indicates that Burford abstention should not apply.

Courts have also applied Burford specifically to legal malpractice claims, and their rulings offer further support to the conclusion that Burford does not preclude the court from hearing this case. In Haak Motors LLC v. Arangio, 670 F. Supp. 2d 430, 434 (D. Md. 2009), the District of Maryland found that a legal malpractice action against attorneys and a law firm did not involve the proceedings or orders of a Maryland administrative agency and Burford was inapplicable because the Plaintiffs alleged

13

common law tort and contract claims that would require the application of well-settled law. Similarly, Gracious Living is alleging a common law negligence cause of action against Colucci. Since no South Carolina administrative agency action is at issue, Burford does not apply.

The abstention principle is to be used only in very limited circumstances. In Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996), the Supreme Court held that federal courts have power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary and may not do so in common-law action for damages. Here, Gracious Living is seeking actual and punitive damages, not equitable relief. Under Quackenbush, this alone means that Burford abstention does not apply.

Finally, "the power to dismiss recognized in Burford represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." Quackenbush, 517 U.S. at 728. Abstention is not a "license for free-form ad hoc judicial balancing of the totality of state and federal interests in a case." Martin v. Stewart, 499 F.3d 360, 364 (4th Cir. 2007). The Supreme Court has outlined a narrow set of circumstances where Burford abstention is appropriate, and Gracious Living's legal malpractice claim does not fall within any of those circumstances.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** Colucci's motion to dismiss for lack of personal jurisdiction and **DENIES** Gracious Living's motion to remand.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 19, 2016**
**Charleston, South Carolina**